Howard GILBERT, Lester Rickert, Rufus Campbell, Michael Kennedy, and Robert and Meredith Sawyer, on behalf of themselves and others similarly situated, Plaintiffs,

v.

The WOODS MARKETING, INC., a Wisconsin Corporation, Terracor, Inc., a Utah Corporation, Ian M. Cumming, C. Bruce Miller, Jim N. Ward, Glenn L. Pace, Kenton W. Willis, Eric Gardner, Jay R. Bingham, Ralph R. Shaw, Francis I. Previte, Jr., Kent B. Linebaugh, Franklin D. Johnson, H. Roger Boyer, Emmanuel A. Floor, and Glendon E. Johnson, Individually, Defendants.

No. 4–76–Civil 397.

United States District Court,
D. Minnesota,
Fourth Division.

July 13, 1978.

Charles A. Collins, Rerat Law Firm, Thomas C. Bartsh and Lewis A. Remele, Jr., Simonson & Bartsh, Minneapolis, Minn., for plaintiffs.

Edward M. Glennon and John C. Goetz, Lindquist & Vennum, Minneapolis, Minn., for defendants.

Samuel I. Hanson and Peter W. Sipkins, Briggs & Morgan, St. Paul, Minn., for defendant H. Roger Boyer.

## MEMORANDUM ORDER

LARSON, Senior District Judge.

This action arises out of the sale of vacation lots in a land development known as The Woods in Wisconsin. Plaintiffs allege that the defendants misrepresented or omitted material facts in connection with the sale of the lots to Minnesota residents. Plaintiffs have sued defendants on their own behalf and seek to maintain a class action on behalf of all Minnesota residents who purchased lots from the defendants. Plaintiffs seek recovery of damages or rescission under §§ 1404 and 1410 of the Interstate Land Sales Full Disclosure Act (ILSA), 15 U.S.C. §§ 1701, et seq.; §§ 12 and 15 of the Securities Act of 1933,[1] 15 U.S.C. §§ 77l and 77o; § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5; § 83.37 of the Minnesota Subdivided Land Sales Practices Act, Minn. Stat. § 83.20, et seq.; and common law fraud and breach of contract. Presently, the Court must determine whether this action should proceed as a class action.[2]

Federal Rule of Civil Procedure 23 sets forth the standards for determining the desirability of certifying class representatives. Rule 23(a) conditions certification on a showing that:

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Brief discussion of each of these elements will suffice. With respect to the size of the class, the parties indicate that approximately 400 Minnesota residents purchased lots at The Woods. Joinder of all or a large portion of these individuals would be sufficiently troublesome as to be called impracticable. Similarly, common questions of law or fact have been alleged. Plaintiffs complain that defendants misrepresented and omitted a list of various material facts to many of the potential purchasers. The third requirement, typicality, is satisfied by

---

1. Plaintiffs have invoked § 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q (1970). The Eighth Circuit has held that § 17(a) does not create a private cause of action. *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (1977); *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 788–90 (1967).

2. By Memorandum and Order of March 16, 1977, the Court granted defendants' motion to dismiss plaintiff Howard Gilbert's claims under ILSA concerning his 1973 purchase. The Court held in part that the Federal equitable tolling doctrine could not extend the three year limitation period of limitations established by § 1412 of the ILSA. By Order filed April 1, 1977, however, the Court reversed itself on its own motion and reinstated plaintiff's ILSA claim with respect to his 1973 purchase. At that time the Court was unaware of any authority construing § 1711. Defendants now cite to the Court *Timmreck v. Munn,* 433 F.Supp. 396 (N.D.Ill.1977) which held, consistent with the Court's original ruling, that the three year period of § 1711 is absolute and cannot be tolled. Defendants informally urge the Court to reopen this issue once more. In the absence of a formal motion and in view of the fact that resolution of the limitations issue is unnecessary to the determination whether certification is appropriate, the Court declines to reopen the issue at this time.

the fact that the rights of each of the class members to recover are based on the same legal theories. Finally, there is the question whether the representatives will adequately protect the interests of the class. There has been no showing of actual hostility of interests between the named parties and unnamed class members. On the basis of the file to date, the Court believes that if the class were certified, the named representatives and their attorneys would afford adequate protection to class members.

■ Rule 23(a) describes only the prerequisites to class certification. The Court must also consider the factors stated in Rule 23(b)(3). A court may certify an action for class representation if:

> "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

After careful review of the pleadings and the discovery accomplished to date, the Court concludes that individual issues predominate over common questions and that a class action would not be superior to the maintenance of individual suits by class members desiring to sue any or all of the defendants.

The focus of plaintiffs' Federal claims appears to be ILSA. In many respects the provisions of ILSA track requirements of Federal securities laws. There appear to be five more or less separate categories of liability under ILSA. A developer violates ILSA and may be liable if (1) it sells without filing and having in effect a statement of record, §§ 1709(b)(1) and 1703(a)(1); (2) the statement of record contains a material representation or omits to state a material fact, § 1709(a); (3) it fails to deliver a property report to the purchaser prior to or at the time of sale, §§ 1709(b)(1) and 1703(b); (4) the property report contains a material representation or omits to state a material fact, § 1709(b)(2); or (5) it (A) employs a scheme to defraud, (B) uses a material misrepresentation upon which the purchaser relies, or (C) engages in any practice that would operate as a fraud upon a purchaser, §§ 1709(b)(1) and 1703(a)(2).

Plaintiffs rely primarily on the fifth of these categories,[3] which is essentially similar to Rule 10b–5.[4] Two apparent distinctions are of no consequence. First,

---

**3.** If the instant action turned on any of the first four of these categories of liability, it would be more likely that common questions would predominate. Reliance does not appear to be an element of any of these categories, *see, e. g. Bryan v. Amrep Corp.*, 429 F.Supp. 313, 317 (S.D.N.Y.1977); *Hoffman v. Charnita, Inc.*, 58 F.R.D. 86, 90–91 (M.D.Pa.1973), at least if the similarity to § 12 of the Securities Act can be taken as evidence that Congress intended similar interpretations under ILSA. Moreover, the factual question whether the statute had been violated would either be identical as to each class member or would be susceptible to fairly simple analysis. For example, the question whether a statement of record was in effect would be common to all class members. Allegations that the statement of record or property report contained false statements would also be subject to proof common to the class. And while the question whether purchasers received their property report in timely fashion could vary from purchaser to purchaser, in general such a question would not require complicated evidence. Individual questions would still arise, however, as to the value of each plaintiff's lot and as to the ability of each plaintiff to invoke the equitable tolling doctrine. In any case, the third amended complaint and the depositions of plaintiffs reveal that none of the four categories are genuine issues in this case. The gist of plaintiffs' complaint, if not the sole complaint under ILSA, falls under the fifth category.

**4.** Section 1703 provides in part:

"(a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—

\* \* \* \* \* \*

(2) in selling or leasing, or offering to sell or lease, any lot in a subdivision—

(A) to employ any device, scheme, or artifice to defraud, or

(B) to obtain money or property by means of a material misrepresentation with respect to any information included in the statement of record or the property report or with respect to any other information pertinent to the lot or the subdivision and upon which the purchaser relies, or

(C) to engage in any transaction, practice, or course of business which operates or

§ 1703(a)(2)(B) expressly provides that reliance is an element whereas Rule 10b–5(2) does not, but courts have grafted a reliance element to the 10b–5 cause of action as part of the causation test. *See Harris v. American Investment Co.,* 523 F.2d 220, 229 n.7 (8th Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976). Second, unlike 10b–5(2), § 1703(a)(2)(B) does not expressly proscribe omissions. In *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), however, the Supreme Court indicated that in cases involving failure to disclose as the principal alleged fraud, analysis belongs under 10b–5(1) and (3) and that the reliance requirement may be dispensed with so long as the omitted information was material. *Id.,* at 153–54, 92 S.Ct. 1456. Presumably the same conclusions apply under § 1703(a)(2)(A) and (C) so that plaintiffs may establish a case under those sections, without proof of reliance, so long as the principal alleged fraud is a failure to disclose.

■ As indicated above, reliance is an essential element to plaintiffs' case under § 1703(a)(2)(B) but possibly not under § 1703(a)(2)(A) and (C). Common questions are less likely to predominate in fraud cases in which reliance must be proven individually. *See e. g. White v. Deltona Corp.,* 66 F.R.D. 560 (S.D.N.Y.1975). Thus, it becomes important to determine whether the proof in this case will necessitate a showing of reliance.

Toward that end the Court has examined the allegations of the complaint and the depositions filed with the Court. It should be noted that this is not a case in which the Court must speculate about the probable issues from skeletal or preliminary pleadings. The complaint has been repeatedly revised to trim it of allegations on which

the plaintiffs do not rely. The depositions and documentary evidence supplement the record and permit tentative assessments of the nature of the evidence that will be introduced at trial.

■ The third amended complaint lists nine general sorts of misrepresentations allegedly made to plaintiffs. Each of them charges defendants with making implications contrary to fact or statements conveying deceptive half-truths. None of the allegations involves a complete failure to refer to a particular material fact. The deposition testimony confirms the Court's impression that the plaintiffs complain of misstatements and failures to convey complete pictures. Consequently, each plaintiff will be obliged at trial to establish his or her reliance on the alleged misrepresentations. *Vervaecke v. Chiles, Heider & Co., Inc.,* 578 F.2d 713 (8th Cir. 1978).

■ In *Hoffman v. Charnita,* 58 F.R.D. 86, 90–91 (M.D.Pa.1973), the court analyzed a failure to reveal engineering reports that indicated that land was unsuitable for on-site sewage disposal systems. The court characterized that as an omission as to which proof of reliance was unnecessary. This Court views the *Hoffman* facts differently. The property report had specifically indicated that sewage disposal was to be by on-site septic tank and that the land was suitable for septic tanks. In the face of that representation, it is inappropriate to characterize the case as involving a total failure to refer to material information. It is only cases in which there is a total failure to state material facts that proof of reliance should be dispensed with. *Vervaecke v. Chiles, Heider & Co., Inc., supra; Bryan v. Amrep,* 429 F.Supp. 313, 319–20 (S.D.N.Y. 1977). Essentially, the suitability of the land in *Hoffman* was misrepresented, not omitted from discussion altogether.

would operate as a fraud or deceit upon a purchaser."
Rule 10b–5 provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

Similarly, in this case the omissions alleged by plaintiffs are failures to state facts necessary to make facts stated not misleading. Plaintiffs by their depositions complain particularly of the repeated reference in sales brochures and oral presentations to the golf course and airfield located near The Woods without explicit acknowledgments that neither amenity was actually part of The Woods. Plaintiffs complain that representations that purchasers could sleep at the island mansion near The Woods without revealing that the mansion was not part of the development and that it would be available only for a short period of time were misleading. These complaints and the other complaints pressed by plaintiffs are not complete omissions to refer to material information; rather they are half-truths and deceits as to which there is no reason to dispense with proof of reliance. *Vervaecke v. Chiles, Heider & Co., Inc., supra.*

Plaintiffs argue that even if reliance is an element, the Court should certify as to the other common grounds and permit separate trials as to reliance. This is often a commendable practice. *See Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 345 (D.Minn.1971). But in this case reliance is not the only issue as to which individual inquiries are necessary. The Court must also hear separate proof as to the representations themselves. Most, if not all, of the sales involved both documentary and oral representations. Various sales brochures were used. Plaintiffs acknowledge that where oral or varied communications have been an integral part of the misrepresentations, courts have been reluctant to certify the class. *See e. g. Moscarelli v. Stamm,* 288 F.Supp. 453, 462–63 (E.D.N.Y.1968). Plaintiffs seek to distinguish cases such as *Moscarelli* by alleging that they will prove a common course of fraud. But plaintiffs are unable to point to any specific facts in support of this allegation. To the contrary, the deposition testimony indicates that each plaintiff heard a slightly different, individualized sales pitch. Some sales were consummated after group meetings in Minneapolis before the purchasers even saw the lots. Others occurred in Wisconsin only after discussion with salesmen there. Most of the specific misrepresentations were, in plaintiffs' terminology, products of "subtle advertising." Impressions created in oral discussions will certainly be a central part of each plaintiff's case. Though numerous plaintiffs may have heard similar representations, this is not a case in which there has been one standard omission in a document received by all class members. *Compare Tober v. Charnita,* 58 F.R.D. 74 (M.D.Pa.1973).

■■ Moreover, under ILSA, each plaintiff will have to establish the value of his or her lot either at the time of suit or at the time it was sold. Individual damage issues do not automatically prevent class certification, *see State of Minnesota v. U. S. Steel Corp.,* 44 F.R.D. 559, 569 (D.Minn.1968), but where other factors indicate that common questions may not predominate, it is appropriate to consider the cumulative impact of separate damage issues.

■ Finally, many of the plaintiffs will have to establish that the statute of limitation can be tolled as to their claims under the Federal equitable tolling doctrine. This factual issue will involve both oral and written communications, presumably, and also cuts against certifying the class. *See Lukenas v. Bryce's Mountain Resort, Inc.,* 538 F.2d 594, 597 (4th Cir. 1976).

On this record the Court is convinced that common questions do not predominate. The Court is also convinced that trying plaintiffs' claims as a class action would not be a superior method of handling this case. The file in this case gives rise to some doubt that large numbers of class members desire to bring suit. The Court is not aware that any separate actions have been filed. Of more importance, most of the claims involved, ranging from $2,000 to $15,000, are sufficiently substantial that the class members will be able to justify vindication of their rights in individual actions. Liberal joinder policies under the Rules of Civil Procedure may permit many claims to be tried together if economies can thereby be achieved. In view of the need for individual adjudication of all the central issues, the Court is unable to conceive of any substan-

tial additional economies that could be achieved through class certification. In sum, the Court concludes that plaintiffs' claims under ILSA fail to qualify for class certification under Rule 23(b)(3).

■ Analysis of the certification question is essentially similar when plaintiffs' claims under Rule 10b–5 are considered. As discussed above, the ILSA claims at issue in this case arise under § 1703(a)(2), which is patterned after Rule 10b–5. The same individual issues will arise under 10b–5 as under ILSA. One question unique to the 10b–5 claims, whether the contracts for deed that plaintiffs entered into constitute securities, is common to all members of the class. Nevertheless, the Court concludes that common questions do not predominate under the 10b–5 claims for the same reasons they do not predominate under the ILSA claims.

■ Turning to plaintiffs' 1933 Securities Act claims, the Court does not reach the Rule 23(b)(3) analysis. The Court concludes that the fundamental prerequisite of Rule 23(a)—that there be a class entitled to sue—is not satisfied for the Securities Act claims. Plaintiffs' Securities Act claims are subject to the one year limitations period established in § 13 of that Act, 15 U.S.C. § 77m (1970). The affidavit of Steven D. Green filed in connection with this matter reveals that no Minnesota residents purchased lots at The Woods during the year period before the commencement of this action. Plaintiffs have not pleaded that the one year period under the Securities Act has been tolled by any actions of the defendants; the allegations of tolling are directed entirely to ILSA claims. Thus, the Securities Act claims arising out of lot purchases by Minnesota residents are all barred by § 13. Certification of a class for such claims would, therefore, be wasteful.

■ Having concluded that no class should be certified at this time for any Federal claims, the Court lacks subject matter jurisdiction over the State law claims of any class members other than the named plaintiffs. As a result, the Court lacks power to certify a class claim arising under the Minnesota Subdivided Land Sales Prac-

tices Act, the Minnesota common law of fraud, or Minnesota contract law.

Rule 23(d)(4) gives this Court the power to require plaintiffs to amend their complaint to eliminate allegations that they represent absent persons. The Court has decided to do so, but the Court's Order should not be understood to necessarily foreclose later motions to certify a class or subclass should further discovery or later developments reveal that class treatment would be appropriate.

IT IS ORDERED:

That plaintiffs shall strike from their pleadings all allegations as to the representation of absent persons.